# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GORDON PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:14-cv-01854-SEB-DKL |
| | ) | |
| CHRISTOPHER DUCKWORTH, and | ) | |
| JAMES FISCUS, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment [Dkt. 29] is **granted.** The defendants' motion to strike surreply [Dkt. 41] is **denied.**

### I.   Background

Gordon Parker ("Mr. Parker") brings this 42 U.S.C. § 1983 civil rights action against Detective Christopher Duckworth and Sergeant James Fiscus. Mr. Parker alleges in his complaint that the defendants made false and misleading statements in an Affidavit for Probable Cause ("PC Affidavit") to make it appear that he had committed crimes. Mr. Parker was arrested and charged with five felony offenses. The charges against him were ultimately dismissed. He brings claims of unlawful seizure/arrest and malicious prosecution under the Fourth Amendment to the United States Constitution. He seeks compensatory and punitive damages.

The defendants seek resolution of Mr. Parker's claims through the entry of summary judgment. Mr. Parker has opposed the motion. The defendants replied and Mr. Parker filed a surreply.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

### III. Discussion

#### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Parker as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:[1]

On May 1, 2012, the Indianapolis Metropolitan Police Department ("IMPD") North District Narcotics Unit ("ND Narcotics") began working with a credible and reliable confidential informant ("CI") to arrange controlled buys at Jonathan's Barbershop, 3939 North Keystone Avenue, Indianapolis, Indiana, and Refurb-A-Tronics, 3937 North Keystone Avenue, Indianapolis, Indiana, to stop the sale and distribution of illegal drugs. Approximately 31 controlled buys were conducted during that investigation. Mr. Parker's claims relate to a controlled

---

[1] Even though Mr. Parker's surreply was not properly filed because it did not respond to any new evidence, Local Rule 56-1, the defendants' motion to strike surreply [dkt. 41] is **denied**. The Court, however, has considered only evidence that complies with Rule 56(c)(1) in ruling on the motion for summary judgment.

buy that was conducted in the parking lot of Jonathan's Barbershop at approximately 6:30 p.m. on May 23, 2012 ("Controlled Buy"). Mr. Parker was a self-employed barber who rented a chair at the barbershop.

Prior to the Controlled Buy, Detective Duckworth and Special Agent Jason Tortorici provided the CI with an audio and video recording device. The CI and his vehicle were then searched. This search revealed that the CI did not have any drugs on his person or in his vehicle prior to the Controlled Buy. The CI was then provided pre-recorded IMPD buy money.

After the CI and his vehicle were searched, Detective Duckworth and Agent Tortorici followed the CI to the north side of the parking lot at Jonathan's Barbershop and watched him park his vehicle. While conducting surveillance, the defendants observed a black male, later identified as Mr. Parker, drive a gold 1999 Chrysler Concorde ("Concorde") onto the north side of the parking lot, stop, and park. They then observed Jamarson Fitzgerald ("Fitzgerald") exit the front passenger side of the Concorde and walk to the passenger side of the CI's vehicle. Fitzgerald then handed the CI a wadded up paper towel containing a substance, believed to be cocaine, in exchange for pre-recorded IMPD buy money. Mr. Parker has viewed the video and audio recording that the CI captured during the Controlled Buy ("CI's Recording") and he concedes that the PC Affidavit accurately depicts what occurred during this part of the Controlled Buy.

After participating in this exchange, Fitzgerald walked toward the front passenger side of Mr. Parker's vehicle. The CI then asked Fitzgerald if he had any marijuana. Fitzgerald responded that he did have marijuana. Mr. Parker has viewed the CI's Recording and he concedes that the PC Affidavit accurately depicts what occurred during this part of the Controlled Buy.

The CI then exited his vehicle and approached Fitzgerald. At that time, Fitzgerald had the door to the Concorde swung open and he was leaning inside the vehicle, rummaging through a bag

that was resting on the front passenger seat. Fitzgerald removed a substance believed to be marijuana from the bag and exchanged that substance for pre-recorded IMPD buy money. Mr. Parker has viewed the CI's Recording and he concedes that the PC Affidavit accurately depicts what occurred during this part of the Controlled Buy.

During both exchanges, Mr. Parker was sitting in the driver's seat of his parked car. He sat approximately 20 feet away from the first exchange and three to five feet away from the second exchange. Mr. Parker concedes that the PC Affidavit accurately describes his location during both exchanges. He states, however, that he did not see what occurred during either exchange.

After the Controlled Buy, when Detective Duckworth approached the CI to search him, he smelled the strong odor of marijuana when he was three to five feet away from the CI. Detective Duckworth discovered that the CI had substances believed to be cocaine and marijuana on his person during the search conducted following the Controlled Buy. The CI did not have these substances on his person or in his vehicle when he was searched prior to the Controlled Buy. Detective Duckworth transported these substances to the IMPD property room. The substances were tested and it was confirmed that they contained 1.57 grams of cocaine and 2.7 grams of marijuana.

Sergeant Fiscus referenced the Controlled Buy in the PC Affidavit that he submitted to the Marion County Superior Court on November 13, 2012. The information that was included in that PC Affidavit came from several different sources. For instance, both defendants observed Mr. Parker driving onto the north side of the parking lot at Jonathan's Barbershop. Also, Mr. Parker's presence during the Controlled Buy was confirmed by the CI's statements, a photo line-up, the defendants' observations, BMV records, and the CI's Recording.

Another source of information that Sergeant Fiscus referenced when preparing his PC

Affidavit was the CI's Recording. The CI's Recording allowed Sergeant Fiscus to corroborate the information that the CI provided to detectives following the Controlled Buy. The defendants had no reason to doubt the CI's credibility. Prior to working with ND Narcotics, the CI provided IMPD with credible information that was independently verified and used to prosecute other criminal cases. The CI's statements concerning the Controlled Buy were also corroborated by the CI's Recording, the searches that occurred before and after the Controlled Buy, the scientific tests performed on the Controlled Buy drugs, and the constant surveillance by ND Narcotics detectives, including the defendants.

Mr. Parker was listed as one of several individuals who were allegedly "involved in dealing or conspiring to deal Heroin, Cocaine, Marijuana, Controlled Substance, Pirated DVD's, Firearms, Pirated CD's, Hoosier Works EBT cards and fake knock off merchandise from the four separate business locations listed" in the PC Affidavit. Dkt. 31-3. A warrant was then issued for Mr. Parker's arrest on November 14, 2012. After Mr. Parker learned that a warrant had been issued for his arrest, he turned himself in on November 26, 2012. Mr. Parker spent approximately 24 days in jail before making bail. Ultimately, the charges against Mr. Parker were dismissed on March 25, 2014.

### B. Analysis

Mr. Parker alleges that the defendants' conduct constituted an unlawful seizure because probable cause was lacking for his arrest. In addition, he alleges that the defendants' actions constituted malicious prosecution. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The defendants argue that probable cause supported Mr. Parker's arrest and even if probable cause was lacking, they are entitled to

qualified immunity.

For both of Mr. Parker's claims, he must show that he was arrested without probable cause. "'Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.'" *Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015) (quoting *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006)). "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville,* 320 F.3d 733, 743 (7th Cir. 2003). "In determining whether information submitted to a judicial officer in support of a warrant application was sufficient to establish probable cause, we look only at what the officer knew at the time he sought the warrant, not at how things turned out in hindsight." *Id.*

Mr. Parker alleges that Detective Duckworth observed Mr. Parker parked at the barber shop but did not state that he engaged in any illegal activity. This is not disputed. Detective Duckworth observed the vehicle pull onto the north side of the barber shop parking lot. The driver of the car was later identified as Mr. Parker through the video, records on the vehicle, the CI's photo identification, and other records. Detective Duckworth did not decide whether or not Mr. Parker should be prosecuted.

Mr. Parker insists that he was not aware that any drug deals were taking place on May 23, 2012, when he gave Fitzgerald a ride. Indeed, the prosecutor eventually dropped the charges against Mr. Parker. Whether or not Mr. Parker did have knowledge of the drug transactions, however, is not the issue here. The pivotal question is whether a reasonable officer would have *reason to believe* that Mr. Parker, by driving Fitzgerald and by being in close proximity to the transactions, was aware of and was an accomplice to Fitzgerald in those deals.

Several circumstances made it reasonable for the defendants to believe that Mr. Parker was

aware that Fitzgerald was making the drug deals from just outside Mr. Parker's car in the parking lot. It is reasonable for an officer to believe that anyone driving someone intent on making a drug deal would be trusted and helping, at the very least by keeping a look out for police or assisting if any other complications arose. Based on Detective Duckworth's own experience in smelling the strong odor of the marijuana on the CI from three to five feet away, it was reasonable for him to believe that Mr. Parker could have also smelled the strong odor of marijuana when Fitzgerald retrieved it from the bag resting on the passenger seat in his car. Mr. Parker was also sitting within three to five feet from the marijuana exchange. The CI had provided reliable information in the past and during the May 23, 2012, transaction. The audio and video recordings and searches of the CI before and after the purchases substantiated the allegations that Fitzgerald participated in the drug deals. Mr. Parker's presence, as Fitzgerald's driver, would lead a reasonable officer to believe that he was aiding Fitzgerald in the illegal activities.

"A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Hart,* 798 F.3d at 591 (internal quotation omitted). Mr. Parker has not presented any admissible evidence showing that either defendant falsified any statements that were included in the PC Affidavit.

The defendants had probable cause to believe that Mr. Parker participated in the commission of a crime. Even if they were in fact mistaken, no reasonable jury could find that they lacked probable cause in believing that Mr. Parker was involved in unlawful drug activity. Because probable cause is a complete defense to claims of false arrest and malicious prosecution, the defendants are entitled to summary judgment on Mr. Parker's claims.

Even if the Court had concluded that probable cause did not, in fact, exist for Mr. Parker's arrest, the defendants have raised the defense of qualified immunity. "Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about." *Burritt v. Ditlefsen,* 807 F.3d 239, 249 (7th Cir. 2015) (emphasis in original) (internal quotation omitted). Qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[T]he Court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted." *Burritt,* 807 F.3d at 249 (internal quotation omitted).

"Although closely related, a determination of actual probable cause is separate and distinct from a determination of what is sometimes referred to as 'arguable probable cause' for qualified immunity purposes." *Id.* at 250. "An officer is entitled to qualified immunity if a reasonable officer could have mistakenly believed that probable cause existed." *Id*. (internal quotation omitted). "Thus, as long as [the officer] reasonably, albeit possibly mistakenly, believed that probable cause existed to arrest [the plaintiff], then [the officer] is entitled to qualified immunity." *Id*. (internal quotation omitted). "The fact that criminal charges are eventually dropped or the complaining witness later recants has no consideration in the determination of arguable probable cause at the time of arrest." *Id.* at 249. Having found that the defendants did have probable cause to include Mr. Parker in the PC Affidavit, it is plain that, in the alternative, they would be entitled to qualified immunity.

## IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [Dkt. 29] is **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:   2/22/2016

_[signature]_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gordon Parker
4514 Caroline Ave.
Indianapolis, IN 46205

All electronically registered counsel